# Exhibit D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

DAVID CROWDER,

        Plaintiff,

-against-

        05 Civ. 8429 (CM)(LMS)

VALLEY POLICE DEPARTMENT, POLICE
CHIEF OF THE VILLAGE OF SPRING VALLEY
and POLICE OFFICER LOUIS SCORZIELLO,

        Defendants.

---------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER DISMISSING COMPLAINT

McMahon, J.:

    Plaintiff accuses Spring Valley police officer Louis Scorziello of arresting him without probable cause, using excessive force to effect the arrest, and malicious prosecution. Scorziello seeks dismissal of the complaint on the ground of qualified immunity. His superior, Chief Louis Furco, seeks dismissal of the claims against him on the ground that plaintiff states no constitutional claim against Furco (and so no constitutional claim against the chief) and also because a state law claim for negligent supervision was not the subject of a notice of claim. Gen Mun. L. § 50. The Village of Spring Valley seeks dismissal of the complaint against it on the ground that any federal constitutional claim is barred by Scorziello's qualified immunity, and in reliance on the General Municipal Law.

    For the reasons stated below, the complaint is dismissed.

Qualified Immunity: Standard

    A government official accused of a constitutional tort can obtain dismissal of the complaint if he is entitled to qualified immunity for his actions. Qualified immunity is available to an officer when: (1) his conduct did not violate a clearly established constitutional right; and (2) it was objectively reasonable for him to believe that his conduct did not violate any constitutional right of the plaintiff. Saucier v. Katz, 533 U.S. 533 U.S. 194 (2001).

    As the Second Circuit explained in Stephenson v. John Doe, Detective, 332 F.3d 68 (2d Cir. 2003), when determining a motion to dismiss on qualified immunity grounds in advance of full

merits discovery, the plaintiff's version of the facts is presumed to be true, and the question to be answered is whether a reasonable Government officer, confronted with the facts as alleged by plaintiff, could reasonably have believed that his actions did not violate some settled constitutional right. Claims that a public officer made a reasonable mistake of fact, "go to the question of whether the plaintiff's constitutional rights were violated, not the question of whether the officer was entitled to qualified immunity." Stephenson, 332 F.3d at 78 (citing Saucier, 533 U.S. at 205, 206).

The right of an individual to be free from arrest without probable cause and to be free from the use of force that was not needed to effect the arrest were both well-settled at the time of the acts complained of by Mr. Crowder. So we turn to the second step of the Saucier analysis, which presents the key question on this motion: whether a reasonable officer in Officer Scorziello's position could have thought (1) that he had probable cause to arrest plaintiff and (2) that he had a right to use the amount of force used in order to effect that arrest. In looking at these questions, we view the facts most favorably to the plaintiff. For that reason, plaintiff's deposition has been taken, and the particulars of his complaint are fully fleshed out.

In connection with the claim for false arrest: Finding probable cause is a discretionary act within a police officer's official capacity. Hunter v. Bryant, 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). An officer who makes an arrest lacking probable cause is entitled to qualified immunity if officers of reasonable competence in the same circumstances and with the same knowledge could disagree whether probable cause existed. See Lee v. Sandberg, 136 F.3d 94, 102 (2d Cir. 1997); Anderson v. Creighton, 483 U.S. at 641, 107 S.Ct. at 3041. This mistaken but objectively reasonable belief has recently been referred to as arguable probable cause. See, e.g., Cerrone v. Brown, 246 F.3d 194, 202 (2d Cir. 2001); Coons v. Casabella, No. 00-9503, 2002 WL 483410, at *2 (2d Cir. Mar. 25, 2002); 1A Martin A. Schwartz & John E. Kirklin, Section 1983 Litigation Claims and Defenses § 3.21 (3d ed. 1997). Thus, an arresting officer is entitled to summary judgment on qualified immunity grounds if, from the view of the record most favorable to the plaintiff, a jury could conclude that arguable probable cause existed. Cerrone, 246 F.3d at 202; see Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1985).

In connection with the claim for use of excessive force: courts examine several factors when they evaluate claims of excessive force, including the severity of the crime at issue; whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect resisted or attempted to evade arrest by flight. Graham v. Connor, 490 U.S. 386, 395-97 (1989). An officer is entitled to qualified immunity as long as no rational jury could conclude that the force used was so excessive that no reasonable police officer confronted with the facts recounted by plaintiff would have made the same choice. Lennon v. Miller, 66 F.3d 416, 426 (2d Cir. 1995); Singleton v. City of Newburgh, 1 F. Supp. 2d 306 (S.D.N.Y. 1998).

In connection with the claim for malicious prosecution: if a reasonable police officer could have concluded that there was probable cause to charge the plaintiff with a crime, the officer is entitled to qualified immunity on a claim for malicious prosecution, even if the plaintiff was acquitted at trial. See Obilo v. City University of City of New York, 2003 WL 1809471 **2, 11

(E.D.N.Y. April 7, 2003); Williams v. City of New York, 2003 WL 22434151 **6-10 (S.D.N.Y. October 23, 2003).

Statement of Facts

The following is plaintiff's version of what happened on the evening of June 21, 2004. It is taken entirely from plaintiff's deposition. Although defendant has attached both the civilian complaint prepared by the complainant and the Spring Valley Police Incident Report that was prepared by Officer Scorziello (Ex. C and D to the moving papers), there is only one thing from those documents that is relevant to this motion insofar as it seeks dismissal of the charges of false arrest and excessive force: the statement in the Incident Report concerning why officers were dispatched to the scene. Nothing else in Ex.C and no portion of Ex. D will be considered. I will also not consider the photographs of the interior of the convenience store (Ex. E), because there is no evidence in the record before me that Officer Scorziello saw the interior of the convenience store before he encountered plaintiff.[1] I will consider Exhibits D and E in connection with the motion insofar as it is addressed to the charge of malicious prosecution (see discussion below).

On the night of June 21, 2004, David Crowder, his older brother James, and his brother's friends Sean and Chris were coming back from the Spring Valley bus station. David and James were on their way to their mother's house at 7 Orchard Street in Spring Valley, where David lived at the time. They stopped to purchase cigarettes at a gas station convenience store (Tr. 39) on Route 45 (also known as North Main Street) in Spring Valley. David was made to wait at the counter, where one clerk was flirting with a young lady and the other simply ignored plaintiff. Annoyed at the lack of service, he made a remark along the lines of, "It's crazy. I have to sit here and wait for a pack of cigarettes." (Tr. 28). "Disrespectful" words (Tr. 28) or "curse words" (Tr. 30) were exchanged between plaintiff and the clerk. The clerk picked up a tire iron. Crowder said, "What you gonna do

---

[1] The complainant's statement (Ex. D attached to defendants' motion papers), prepared after Crowder was arrested, is irrelevant on a pre-discovery motion to dismiss a claim for false arrest on qualified immunity grounds, because it tells me nothing about what Officer Scorziello knew at the time he encountered the plaintiff. On the facts posited, Scorziello had not yet spoken to the store clerk, and so did not have available to him the clerk's side of the story at the moment of the arrest. There might be cases in which the complainant's statement could be part of the record on a qualified immunity motion, but only if it were clear that the officer spoke to the complainant before effecting the arrest. The same is true of the Incident Report (Ex. C), which was also prepared after the arrest. There is, however, one statement in that report that is relevant – the statement that recounts what the officer was told when he was dispatched to the scene. In this case, the only relevant sentence in Ex. C is, "Dispatched to location on report of disorderly parties destroying property inside of store." The court would also have considered the text or tape of the dispatch message that radioed to Officer Scorziello, or the notes of the dispatcher, or even the testimony of Officer Scorziello about what he heard, because such evidence bears on what the officer knew at the time he effected the arrest. The photographs are irrelevant for the reason stated in the text, not because they were taken after the incident.

3

with that?" (Tr. 31) or "You're gonna hit me?" (Tr. 41). The clerk "didn't do nothing" but told Crowder and his party to get out of the store. (Tr. 31). Crowder did not do anything to the clerk and "I wasn't gonna do anything to him. I was gonna go to his face, but I was gonna go up to him." (Tr 36). Crowder denied trashing the store, but said that "Things might have fell over as I approached the clerk and my brother grabbed me and held me.... I didn't intentionally kick anything." (Tr 35). However, on the way out of the store, "What I did is when I came out of the store is I just, like, back kicked the garbage, but it didn't even fall. (Tr. 42).

The clerk said he was going to call the police, got on the phone and dialed the number. (Tr. 38). Police officers were dispatched to the scene "on report of disorderly persons destroying property inside of store." Id.

Crowder left the gas station property. (Tr. 39). At that point, at least three police cars arrived. (Tr. 40). One car, driven by defendant Scorziello, drove up to plaintiff. Scorziello said, "Don't run. I just gotta talk to you." (Tr. 44). Crowder, who was on parole supervision, did not run and cooperated with Scorziello, answering his basic questions. (Tr. 44, 47-48). At no point was there any verbal confrontation between plaintiff and Scorziello (Tr. 45) and Scorziello did not raise his voice toward plaintiff (Tr. 46). At no time was there any physical altercation between plaintiff and defendant. (Tr. 49). Other officers dealt with David Crowder and his friends. (Tr. 46)

While plaintiff was answering Scorziello's questions, explaining that he had just come from the store, he turned toward the store to point it out to the officer. He saw the clerk standing with the tire iron. The clerk began to run toward plaintiff. As plaintiff put it, "That's when things got, I guess, out of hand, because me and the clerk actually was, you know, going around in a circle. No blows were thrown, but we was going around in a circle probably for like, maybe not a minute. It just happened so fast. We went around a circle at least two times, and when my back turned to the officer that's when he hit me with the stun gun. I fell to the floor and he got on top of me and hit me again with it." (Tr. 48). The circling was like sparring with someone, just going around with hands up "in self-defense." (Tr. 50-51)

After plaintiff was hit with the stun gun, his whole body shook and he could not control himself. (Tr 51). Crowder did not resist at all. (Tr. 50). The officer stunned him twice. (Tr. 52). Crowder was hit only with the stun gun. (Tr. 55, 58). The officer got on top of him and held him down and held the taser gun to his back. (Tr. 54-55). Plaintiff's brother told Scorziello to stop and tried to see if David was all right, but other officers grabbed him. (Tr. 56-57). Plaintiff and his brother were handcuffed and arrested.

Plaintiff was charged with various misdemeanors, including disorderly conduct and resisting arrest. He was tried and acquitted of all charges.

Plaintiff's parole officer held him for a violation after he was arrested. Following his acquittal, plaintiff "copped" (i.e., pled guilty) to a parole violation for smoking marijuana, which he had admitted to his officer prior to his arrest. He was sentenced to one year on the parole violation.

4

Plaintiff commenced this action, charging Officer Scorziello with false arrest, excessive force and malicious prosecution. He charged Chief Furco of the Spring Valley Police Department with failure to train/negligent supervision. He seeks to hold the Village liable for Scorziello's and Chief Furco's torts.

Plaintiff, acting pro se, filed a notice of claim with the Village as required by Gen. Mun. L. §50. The Notice of Claim is in the record as Ex. A to the moving papers.

## Summary of Discussion

On the claims for false arrest and use of excessive force, Officer Scorziello is entitled to qualified immunity. On the claim for malicious prosecution, Officer Scorziello is entitled to dismissal because there was no constitutional violation. Chief Furco and the Village are entitled to dismissal of the federal constitutional claims against them as well.

*Qualified Immunity: False Arrest/Excessive Force*

In connection with the arrest: Scorziello arrived on the scene, summoned by a call about a disturbance involving property damage at a convenience store. When he arrived, he confronted the plaintiff and tried to talk to him. Crowder admitted to the police officer that he had just come from the store, which gave rise to a reasonable suspicion that plaintiff might have been involved in the incident that led to the radio call. Before the officer could fully clarify the situation, Crowder interrupted the questioning, turned away and moved toward the convenience store clerk, who was running toward him. The two men circled each other in what was obviously a threatening manner; Crowder's hands were raised like those of a sparring boxer. Crowder himself described the scene as "out of hand."

Particularly where, as here, everything happened very quickly, a reasonable police officer confronted with the facts recited above could have concluded that there was probable cause to arrest Crowder for disorderly conduct.[2] Indeed, it would appear that the officer had actual, not merely arguable, probable cause for the arrest; plaintiff, by his own admission, was engaged in threatening behavior toward the convenience store clerk. But at a minimum, Scorziello had arguable probable cause to make the arrest. He is, therefore, entitled to qualified immunity.

In connection with the use of force: Scorziello was not just effecting an arrest. He was confronted with a volatile situation. Two men who had been involved in an incident that was the subject of a police report appeared ready to attack each other. Fists and a weapon were raised. It was reasonable for Scorziello to believe that Crowder posed an immediate threat to the safety of

---

[2] "A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: (1) He engages in fighting or in violent, tumultuous or threatening behavior . . . ." N.Y. Penal Law § 240.20 (McKinney 2005).

5

others, and to conclude that he needed to prevent the situation from escalating further. Plaintiff had already shown himself to be less than amenable to the officer, having run away from Scorziello in the middle of questioning in order to engage in this threatening behavior. The officer was not required to interpose himself physically between the two men, placing himself in danger.[3]

Scorziello used a taser (stun) gun to defuse the situation and subdue the man who ran with him and raised his fists. The use of such a gun is not inherently excessive force; as long as the stun administered is reasonable in proportion to the uncertainty of the situation facing the officer, the force of the stun is not excessive. Draper v. Reynolds, 369 F. 3d 1270, 1278 (11th Cir. 2004). On the facts alleged by plaintiff, no reasonable jury could find that Scorziello's use of the taser to stun Crowder constituted excessive force.

Scorziello stunned the plaintiff twice. The first stun caused plaintiff to go down and ended the threat of an imminent fight. The officer then got on top of plaintiff. Crowder, again by his own admission, was moving under the officer. While Crowder attributes the fact that "I couldn't control myself" and "my whole body was shaking" (Tr. 51) to the force of the first stun, I cannot say that no officer, sitting on top of a squirming suspect, could reasonably have concluded that the suspect was resisting, thus justifying a second application of the taser.[4] Moreover, according to plaintiff, at about the time of the second stun, plaintiff's brother approached Crowder and Scorziello, which would further reinforce the idea that plaintiff was resisting arrest.

There is an additional reason why no reasonable trier of fact could find that Scoriello used excessive force. Plaintiff testified that the officer did not hit him or use any force other than the stun gun. There is no evidence that the plaintiff suffered any actual, identifiable physical injury from the application of the taser. Plaintiff has never sought medical help, and while he complains of occasional pain in his back where the taser hit him, he admitted that physicians he consulted at the Rockland County Jail, where he was incarcerated for a parole violation, concluded that plaintiff's complaint warranted nothing more than an aspirin. (Tr. 92-95). The lack of any actual injury negates any claim that the force used was excessive. See Robison v. Via, 821 F.2d 913, 923 (2d

---

[3] Accepting plaintiff's account of the incident, the convenience store clerk was carrying a tire iron during this confrontation. However, the fact that the clerk could reasonably have been understood to present a danger to the police or others (and if he was carrying a tire iron, that is a given) does not mean that it was unreasonable for Scorziello to conclude that plaintiff, whose fists were raised and who was circling the clerk, also presented a danger.

[4] In his brief opposing the motion, plaintiff's counsel argues that at least the second stun must be actionable, accepting plaintiff's testimony that he cooperated with Scorziello and assuming that the first stun resulted in "temporary paralysis of his body." (Plaintiff's Brief at 6) Unfortunately, plaintiff did not testify that he was temporarily paralyzed; he testified that he shook violently and that he was not in control of his body. If plaintiff had testified to paralysis, the result on this motion might have been different insofar as it concerned the second application of the taser.

6

Cir.1987); Hernandez v. City of New York, 2004 WL 2624675 at *8 (S.D.N.Y. 2004).

*Qualified Immunity: Malicious Prosecution*

Plaintiff has also brought a claim for malicious prosecution against Scorziello. It is true that plaintiff was acquitted at trial of the charges against him, including the charge of disorderly conduct that was the basis for his arrest. However, the dismissal of charges without more will not sustain a claim for malicious prosecution. The plaintiff must also show that the prosecution was initiated against him maliciously and without probable cause to believe that it could succeed. Ricciuti v. New York City Transit Authority, 124 F. 3d 123 (2d Cir. 1997). The issue is what Scorziello knew at the time of the charging decision. If a police officer possessed of the same knowledge as Scorziello could have concluded that there was probable cause to charge the plaintiff with an offense, then he is entitled to qualified immunity and dismissal of the malicious prosecution charge.

By the time Scorziello charged plaintiff with disorderly conduct and resisting arrest, the officer had information in addition to witnessing defendant engaging in threatening behavior toward the convenience clerk (which, in this court's opinion, gives rise to probable cause to charge defendant with disorderly conduct). The police had post-arrest photographs (Ex. E) showing destruction of property inside the convenience store and a formal complaint from the store manager. (Ex. D).

I cannot say that no reasonable police officer would have concluded that there was no basis to prefer formal charges against Crowder for disorderly conduct and resisting arrest. Therefore, Scorziello is entitled to the dismissal of this claim as well.[5]

*Federal Claims Against Chief Furco and the Village*

Since Officer Scorziello is entitled to dismissal of the claims against him, the other defendants are entitled to dismissal of the federal claims against them. Unless Scorziello is liable for a constitutional tort, there is no basis to hold Spring Valley liable to plaintiff under Monell v. New York City Dep't of Social Servs., 436 U.S. 658 (1978). At his deposition, plaintiff testified that Furco was not present at the scene of the arrest and was not personally involved in any way in the case. (Tr. 109). His complaint was for failure to train. A failure to train may afford a basis for holding a municipality liable under Section 1983, (Young v. County of Fulton, 160 F.3d 899 (2d Cir. 1998)), but a precondition for liability is an underlying constitutional violation by a person who was personally involved in the incident (City of Canton v. Harris, 489 U.S. 378, 388 (1989)). Since the claims against Scorziello have been dismissed, no Monell claim on failure to train grounds lies against either the Village or its police chief.

---

[5] I probably could go further and conclude that Scorziello had probable cause to prefer charges, which would bar any claim under state law as well as federal law. However, I am reluctant to go further than qualified immunity because there has been no discovery of Officer Scorziello.

7

*Purported State Law Claims*

Defendants ask me to dismiss a purported state law claim asserted against Chief Furco on the ground that no notice of claim has been filed as to any such claim. In fact, no state law claim of any sort has been asserted in this action.

The complaint filed with this court on June 9, 2005, asks this court only to find that all defendants "violated the plaintiff's civil rights and...have grossly wronged him in their actions which has deprived him of his freedom and respect.... This Court is asked to find these defendants liable for their deliberate indifference toward Plaintiff's civil rights and his suffering." Violation of civil rights is a federal claim. Construing the pleading liberally (as I must), I do not read the complaint as asserting any state law claim. And while plaintiff has now retained counsel, no amended complaint has ever been filed specifically asserting any state law claim. There is, therefore, no state claim, whether against Chief Furco or anyone else, for me to dismiss.[6]

Even if the complaint could be read as pleading justicable state law claims, the Court would decline, in an exercise of its discretion, to exercise supplemental jurisdiction over such claims. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988); see also United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).

Accordingly, the complaint is dismissed with costs to the defendants. The Clerk of the Court is directed to close the file.

Dated: May 18, 2006

　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　U.S.D.J.

---

[6] Failure to train is a recognized basis for holding a municipality liable under Monell. See discussion, supra. I do note that the State of New York does not recognize any doctrine of qualified immunity, so dismissal of the claims against Scorziello on that ground does not operate to bar state law claims arising out of the facts asserted. As I read the complaint, no such claims have been asserted in this court.

8

BY FAX TO:

Genet Getachew
Law Office Genet Getachew
26 Court Street
Brooklyn, NY 11242
(F) (718) 246-9186

Adam I. Kleinberg
Miranda Sokoloff Sambursky Slone Verveniotis LLP
The Esposistio Building
240 Mineola Boulevard
Mineola, NY 11501
(F) (516) 741-9060

9