UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
MARIO GOMEZ

                                  Plaintiff,           07 CIV. 9310 (CLB)(GAY)

       -against-

VILLAGE OF SLEEPY HOLLOW, DETECTIVE
JOSE QUINOY in his individual and official
capacity, POLICE OFFICER ELDRYK EBEL in
his individual and official capacity, POLICE
OFFICER MIKE GASKER in his individual and
official capacity, POLICE OFFICER RICHARD
D'ALLESANDRO in his individual and official
capacity, LIEUTENANT BARRY CAMPBELL in
his individual and official capacity, LIEUTENANT
GABRIEL HAYES in his individual and official
capacity, SERGEANT WOOD in his individual and
official capacity, CHIEF OF POLICE JIMMY
WARREN in his individual and official capacity,
and POLICE OFFICERS JOHN DOES 1 – 4,

                                 Defendants.
------------------------------------------------------------------x

## MEMORANDUM OF LAW

                                  MIRANDA SOKOLOFF SAMBURSKY
                                  SLONE VERVENIOTIS LLP
                                  Attorneys for Defendants
                                  240 Mineola Boulevard
                                  Mineola, New York 11501
                                  (516) 741-7676
                                  Our File No.: 07-157

Of Counsel:
   Michael A. Miranda
   Jennifer E. Sherven

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………………ii

PRELIMINARY STATEMENT…………………………………………………………...…..1

STATEMENT OF FACTS……………………………………………………………………..3

ARGUMENT…………………………………………………………………………………..6

POINT I

    DETECTIVE QUINOY, OFFICER GASKER, OFFICER
    EBEL AND OFFICER D'ALLESANDRO ARE PROTECTED
    BY QUALIFIED IMMUNITY……………………………………………………………6

        FALSE ARREST/IMPRISONMENT
        & MALICIOUS PROSECUTION……………………………………………….7

        EXCESSIVE FORCE……………………………………………………………...8

POINT II

    CHIEF WARREN, SGT. HOOD, LT. HAYES, AND
    LT. CAMPBELL ARE PROTECTED BY QUALIFIED
    IMMUNITY……………………………………………………………………………..11

CONCLUSION………………………………………………………………………………13

# **TABLE OF AUTHORITIES**

**Cases**

Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034 (1987) ............................. 6, 7

Blue v. Koren, 72 F.3d 1075 (2d Cir. 1995). ................................................................ 6, 7

Cosby v. City of White Plains, 2007 WL 853203 (S.D.N.Y. Feb. 9, 2007)................... 12

Crowder v. [Spring] Valley Police Department, 05 Civ. 8429 (CM)(LMS) ........................9

Draper v. Reynolds, 369 F.3d 1270, 1278 (11th Cir. 2004), cert. denied by 543 U.S. 988, 125 S.Ct. 507 (2004)..........................................................................................9

Freeman v. C.O. Perez, 2000 WL 1508254 (S.D.N.Y. Oct. 11, 2000)..............................9

Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002)...................................................... 8

Graham v. Connor, 490 U.S. 386, 396-97, 109 S.Ct. 1865 (1989)................................ 8, 9

Harlow v. Fitzgerald, 457 U.S. 800, 818-19, 102 S.Ct. 2727 (1982) ................................ 6

Hemphill v. Schott, 141 F.3d 412, 418 (2d Cir.1998) ....................................................... 8

Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991)............................................. 6

Lee v. Sandberg, 136 F.3d 94, 102 (2d Cir. 1997) ............................................................ 8

Lennon v. Miller, 66 F.3d 416, 426 (2d Cir. 1995) ........................................................... 9

Lewis v. United States, 388 F. Supp.2d 190, 195 (S.D.N.Y. 2005) .................................. 6

Loria v. Gorman, 306 F.3d 1271, 1282 (2d Cir.2002)...................................................... 6

Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) ...................................................... 6

Malley v. Briggs, 106 S.Ct. at 1096) ............................................................................ 7, 11

Oliveira v. Mayer, 23 F.3d 642, 648 (2d Cir.1994), cert. denied, 513 U.S. 1076, 115 S.Ct. 721 (1995)........................................................................................................ 6

O'Neill v. Town of Babylon, 986 F.2d 646, 650 (2d Cir.1993)........................................ 8

Robison v. Via, 821 F.2d 913 (2d Cir. 1987) ................................................................. 11

Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151 (2001) ............................................................ 7

Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) .................................................. 7

Singleton v. City of Newburgh, 1 F.Supp.2d 306, 313 (S.D.N.Y. 1998) ................................... 9, 10

Taylor v. Kavanagh, 640 F.2d 450, 452 (2d Cir. 1981) ................................................................. 11

Thompson v. Tracy, 2008 WL 190449 *5 (S.D.N.Y. Jan. 17, 2008) .................................. 9, 11, 12

Weyant v. Okst, 101 F.3d 845, 853 (2d Cir. 1996) .......................................................................... 8

## Statutes

Fed. R. Civ. P. 12(c), ..................................................................................................................... 13
42 U.S.C. §§ 1983 and 1985 ...................................................................................................... 1, 10

## PRELIMINARY STATEMENT

The individual defendants, DETECTIVE JOSE QUINOY, POLICE OFFICER ELDRYK EBEL, POLICE OFFICER MIKE GASKER, POLICE OFFICER RICHARD D'ALLESANDRO, LIEUTENANT BARRY CAMPBELL, LIEUTENANT GABRIEL HAYES, SERGEANT WOOD, CHIEF OF POLICE JIMMY WARREN, and POLICE OFFICERS JOHN DOES 1 – 4[1] submit this Memorandum of Law in support of their motion to dismiss this action based on the doctrine of qualified immunity.

Plaintiff's complaint arises out of his October 17, 2006 arrest by the Sleepy Hollow Police Department for aggravated harassment, resisting arrest, assault and obstruction of governmental administration. The complaint at alleges violations of plaintiff's constitutional rights for excessive force; false arrest; false imprisonment and; malicious prosecution. Additionally, plaintiff alleges *Monell* claims against the Village for the failure to train, conspiracy claims under 42 U.S.C. §§ 1983 and 1985, and state law claims sounding in assault and negligence.

As fully set forth herein, plaintiff's claims against the individual defendants are without merit and barred by the doctrine of qualified immunity. In this regard, assuming, *arguendo*, plaintiff's version of the relevant events, his qualified immunity deposition testimony conclusively establishes that the arrest of plaintiff was supported by probable cause. Further, the use of a taser gun in effectuating the arrest was both reasonable and justified under the circumstances. Thus, it follows that the officers involved in plaintiff's arrest, Detective Quinoy, Officer Gasker and Officer Ebel, are entitled to qualified immunity in the instant suit. Likewise, Officer D'Alessandro, who responded to the location near the end of the arrest with Officer Michael Hayes, who is not a defendant, is also entitled to qualified immunity.

---

[1] Although the caption names the John Doe defendants, they have never been identified or served.

Additionally, the remaining individually-named defendants, Chief Warren, Sgt. Hood (s/h/a Sgt. Wood), Lt. Hayes, and Lt. Campbell, are also entitled to qualified immunity with respect to the subject arrest as plaintiff's deposition testimony confirmed that not only were these individuals not present for the subject arrest, plaintiff is also not aware of them having any involvement at all in the arrest.

Each individual defendant deserves his own qualified immunity analysis in the decision on this motion. Their qualified immunity fates do not rise and fall as one.

## STATEMENT OF FACTS[2]

Plaintiff, a retired corrections officer, admits that, on October 17, 2006, following a telephone conversation with Detective Quinoy concerning his adult daughter, he went to the police station. See Exh. C at p. 12, lines 14-17; p. 17 lines 9-22; p. 23.[3] During this phone call with Detective Quinoy, plaintiff told Detective Quinoy that he heard that Detective Quinoy had been going out alone for drinks with plaintiff's adult daughter, Haydee, whom Detective Quinoy has known since she was a child, and that this was very bad/ He accused Detective Quinoy, asking him, how Detective Quinoy could be "such an asshole." See Exh. C, at pp. 21-24. Following this conversation, plaintiff got dressed to go to the police station, where Detective Quinoy was working, to "settle the situation." See Exh. C, at p. 26-27.

When plaintiff arrived at the police station, he observed Detective Quinoy and Officer Gasker standing together in front of the police station. See Exh. C at p. 29, lines 13-17; p. 32, lines 7-12. Plaintiff admits that when he exited his vehicle, Detective Quinoy said "police, don't move" and told plaintiff to put his hands up on the vehicle. See Exh. C at p. 34, lines 20-23. Despite being told not to move, plaintiff turned his head at which point Detective Quinoy hit him. See Exh. C at p. 53, lines 5-7. Plaintiff admits that he then turned around and "took a few punches" at Detective Quinoy. See Exh. C at p. 54, line 25 -- p. 55, line 6. Plaintiff's punches, he believes, made contact with Detective Quinoy's head or eye. See Exh. C at p. 55, lines 14-19; p.59.

According to plaintiff, as he and Detective Quinoy were "grabbing each other very hard, struggling," he felt the taser in the back of the neck. See Exh. C at p. 60, lines 2-11. According to plaintiff, he saw Officer Gasker with a taser in his hand at that time. See Exh. C at p. 62, lines

---

[2] For purposes of this motion only, plaintiff's factual allegations are deemed true.
[3] All exhibits are those annexed to the Sherven Declaration.

3

9-11. Since plaintiff was holding onto Detective Quinoy, they both fell on the ground and continued to wrestle. See Exh. C at p. 60, line 10, p. 62, lines 4-8; p. 66, lines 10-14. Plaintiff then claims to have felt kicks in his ribs but he did not see who was kicking him. See Exh. C at p. 66, lines 16-21; p. 61, lines 6-7, 16. Plaintiff believes that Officer Ebel kicked him because he saw that it was not Detective Quinoy or Officer Gasker. See Exh. C at p. 67-69. Officer Ebel came from inside the police station at some point while plaintiff and Detective Quinoy were wrestling. See Exh. C at p. 70.

While plaintiff was on the ground and before he was ultimately handcuffed, he claims to have been tasered between two and four times. See Exh. C at p. 80, lines 19-22. He did not see which officer used the taser while he was on the ground. See Exh. C at p. 82, lines 4-7.

Plaintiff claims that he told the officers to cuff him, identified himself as a retired corrections officer and that Officer Ebel handcuffed him. See Exh. C at p. 73-74; p. 76.

Plaintiff was not sure whether Detective Quinoy ever used a taser on him. See Exh. C at p. 86. Although plaintiff claims that more than one officer tasered him after he was handcuffed, he cannot testify which officer did it. See Exh. C at p. 88.

After plaintiff was handcuffed, plaintiff saw Officer Michael Hayes and defendant Officer D'Allesandro outside; according to plaintiff, neither one of them made any physical contact with him. See Exh. C at p. 103. Tarrytown police arrived and plaintiff was then helped inside a police car by Officers D'Allesandro and Hayes. See Exh. C at p. 111, 113 lines 21-24. Officer D'Allesandro then drove plaintiff to the back of the police station. See Exh. C at p. 118.

With respect to Officer D'Allesandro, a defendant whom plaintiff has sued in this case, plaintiff testified that "I don't believe he did anything wrong, actually." See Exh. C at p. 135-136.

4

Plaintiff admits that the remaining individually named defendants, Chief Warren, Sgt. Hood, Lt. Hayes and Lt. Campbell were not present during his arrest and were not involved in his arrest. Plaintiff admits that Chief Warren was not present during plaintiff's arrest and plaintiff could not even recall hearing Chief Warren's voice any time while plaintiff was at the precinct following his arrest. See Exh. C at p. 149; p. 151-152. Plaintiff admits that he did not see Sgt. Hood outside the precinct during plaintiff's arrest and only saw Sgt. Hood after plaintiff was inside the precinct following his arrest but sued him individually because he was allegedly one of the sergeants in charge of the shift. See Exh. C at p. 95, 143, 145-46. In fact, plaintiff could not recall seeing any lieutenant outside the police station during his arrest. See Exh. C at p. 95, lines 12-16. Plaintiff admits that he did not see Lt. Hayes at all during his arrest and he testified that he does not know whether Lt. Hayes did anything wrong. See Exh. C at p. 132; p. 142, lines 21-24. Likewise, plaintiff admits that Lt. Campbell was "not there for the incident" and that plaintiff only saw Lt. Campbell the next morning, after plaintiff's arrest. See Exh. C at p. 136, lines 13-15, 24. In fact, according to plaintiff, "Lieutenant Campbell actually didn't do anything wrong" but that plaintiff sued him because Lt. Campbell knew of the situation between plaintiff's daughter and Detective Quinoy and because Lt. Campbell was assigned to investigate plaintiff's arrest. See Exh. C at p. 137, lines 17-20; p. 140, lines 18-24. Plaintiff admits that, upon the advice of his criminal court attorney, he did not speak with Lt. Campbell about the investigation. See Exh. C at p. 139-141.

## ARGUMENT

## POINT I

### DETECTIVE QUINOY, OFFICER GASKER, OFFICER EBEL AND OFFICER D'ALLESANDRO ARE PROTECTED BY QUALIFIED IMMUNITY.

As a rule, law enforcement officers are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights. See Oliveira v. Mayer, 23 F.3d 642, 648 (2d Cir.1994), cert. denied, 513 U.S. 1076, 115 S.Ct. 721 (1995). Even where the right was clearly established at the time of the infringement, a public official is entitled to qualified immunity if he "reasonably believed that his actions did not violate plaintiff's rights . . . even if that belief was mistaken." See Lewis v. United States, 388 F. Supp.2d 190, 195 (S.D.N.Y. 2005) (citing Loria v. Gorman, 306 F.3d 1271, 1282 (2d Cir.2002); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990)). The second prong requires concrete proof that an individual's motives were tainted with discriminatory intent. See Blue v. Koren, 72 F.3d 1075 (2d Cir. 1995). It is the second prong that protects the various individual defendants at bar.

The availability of the defense turns on the "objective legal reasonableness" of the allegedly unlawful action, "asserted in light of the legal rules that were 'clearly established' at the time it was taken." See Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034 (1987) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818-19, 102 S.Ct. 2727 (1982)). Even if the constitutional question is clearly established, a government actor may still be shielded by qualified immunity if "it was objectively reasonable for the public official to believe that his acts did not violate those rights." See Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991). The relevant question is whether the official believed his or her conduct to be lawful. See

Anderson, 483 U.S. at 641. A reasonable, competent official must be able to determine in advance that the actions were unconstitutional. Id. at 640. If reasonably competent officials would have taken the challenged action or could disagree on the issue, the defendant is entitled to qualified immunity. See Malley v. Briggs, 475 U.S. 335, 345, 106 S.Ct. 1092 (1986). In Malley, the Supreme Court held that qualified immunity protected all officials except those who knowingly violate the Constitution or those who are plainly incompetent. Id.

The Blue v. Koren test has required the application of a "heightened standard," which requires the proponent of the constitutional claim "to provide specific allegations or direct evidence of the required state of mind" to successfully oppose summary judgment based upon the defense of qualified immunity. "Particularized evidence of improper motive may include expressions by the officials involved regarding their state of mind, circumstances suggesting in substantial fashion that the plaintiff has been singled out, or the highly unusual nature of the actions taken." Id. at 1084.

The doctrine of qualified immunity is "an entitlement not to stand trial or face other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151 (2001) (internal citations omitted). As set forth herein, plaintiff has not and cannot defeat the qualified immunity afforded to defendants Detective Quinoy, Officer Gasker, Officer Ebel and Officer D'Allesandro.

**FALSE ARREST/IMPRISONMENT & MALICIOUS PROSECUTION[4]**

"Probable cause is established when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Singer v. Fulton County Sheriff, 63

---

[4] Plaintiff's underlying criminal case has not yet been resolved and is currently pending trial.

7

F.3d 110, 119 (2d Cir. 1995) (citing O'Neill v. Town of Babylon, 986 F.2d 646, 650 (2d Cir.1993)). An arresting officer is entitled to qualified immunity from suit on a claim for arrest without probable cause if (1) it was objectively reasonable for the officer to believe probable cause existed or (2) officers of reasonable competence could disagree on whether probable cause existed. See Lee v. Sandberg, 136 F.3d 94, 102 (2d Cir. 1997). "Arguable probable cause" is sufficient to confer the defense of qualified immunity. Id. at 102-03 (internal citations omitted).

Even assuming plaintiff's version of the relevant events, plaintiff's own testimony confirms that there was probable cause to arrest plaintiff. Plaintiff admits that was told not to move but turned his head anyway and that he punched Detective Quinoy in the head or eye. See Exh. C at p. 34, 53-55, 59. Additionally, plaintiff admits that he grabbed Detective Quinoy very hard, struggling, and that they wrestled and both fell to the ground. See Exh. C at p. 60.

Where, as here, there is probable cause for an arrest, an officer is afforded not only qualified immunity, but an absolute defense to liability. See Weyant v. Okst, 101 F.3d 845, 853 (2d Cir. 1996) (probable cause defeats a claim for false arrest/imprisonment); Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002) (probable cause defeats a claim for malicious prosecution).

### EXCESSIVE FORCE

With regard to plaintiff's excessive force claim, courts examine the following factors: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect resisted or attempted to evade arrest by flight. See Graham v. Connor, 490 U.S. 386, 396-97, 109 S.Ct. 1865 (1989); Hemphill v. Schott, 141 F.3d 412, 418 (2d Cir.1998). "To prevail on a motion for summary judgment in an

excessive force case, the evidence must show that 'no rational jury could [find] that the force used was so excessive that no reasonable officer would have made the same choice.'" See Singleton v. City of Newburgh, 1 F.Supp.2d 306, 313 (S.D.N.Y. 1998) (citing Lennon v. Miller, 66 F.3d 416, 426 (2d Cir. 1995)). "However, not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Thompson v. Tracy, 2008 WL 190449 *5 (S.D.N.Y. Jan. 17, 2008) (citing Graham, 409 U.S. at 396). Additionally, while the mere fact that a plaintiff resists arrest is not dispositive of a claim, it is relevant to an inquiry. See Freeman v. C.O. Perez, 2000 WL 1508254 (S.D.N.Y. Oct. 11, 2000).

In Crowder v. [Spring] Valley Police Department, 05 Civ. 8429 (CM)(LMS), a copy of which is annexed as Exhibit "D" to the Sherven Declaration, Judge Colleen McMahon explained that, "An officer is entitled to qualified immunity as long as no rational jury could conclude that the force used was so excessive that no reasonable police officer confronted with the facts recounted by plaintiff would have made the same choice."

Courts have found that, where a taser gun is used to effectuate an arrest, and the use is reasonable in proportion to the uncertainty of the situation, the use of a taser does not constitute excessive force. See e.g. Draper v. Reynolds, 369 F.3d 1270, 1278 (11th Cir. 2004), cert. denied by 543 U.S. 988, 125 S.Ct. 507 (2004). In Crowder v. [Spring] Valley Police Department, 05 Civ. 8429 (CM)(LMS), Judge McMahon, on a qualified immunity motion, held that the use of a taser was reasonable given the volatile situation and that it was reasonable to believe that plaintiff posed an immediate threat to the safety of others where plaintiff had raised fists. See Exhibit "D". Likewise, in the case at bar, the use of a taser gun was reasonable given that plaintiff admittedly punched Detective Quinoy in the head or eye and was struggling and wrestling with him. See Exh. C at p. 60.

9

Under these circumstances, plaintiff can hardly argue that "no rational jury could [find] that the force used was so excessive that no reasonable officer would have made the same choice." See Singleton, 1 F.Supp.2d 306.

Based on all of the aforementioned, it is respectfully submitted that the claims against Detective Quinoy, Officer Gasker, Officer Ebel and Officer D'Allesandro must be dismissed under the doctrine of qualified immunity.

## POINT II

### CHIEF WARREN, SGT. HOOD, LT. HAYES AND LT. CAMPBELL ARE PROTECTED BY QUALIFIED IMMUNITY.

The claims against Police Chief Warren, Sgt. Hood, Lt. Hayes, and Lt. Campbell are subject to the same "qualified immunity" analysis set forth in Point I, supra. Significantly, plaintiff admits that Chief Warren, Sgt. Hood, Lt. Hayes, and Lt. Campbell were not present during his arrest outside of the police precinct on October 17, 2006 and thus, they are entitled to qualified immunity for plaintiff's false arrest, false imprisonment and malicious prosecution claims. Furthermore, even if a jury were to conclude that the police officers' collective use of force was objectively unreasonable, plaintiff still has to prove that the individual defendants were "personally involved in order to recover damages against [them] for the use of excessive force." Thompson v. Tracy, 2008 WL 190449 at *6 (S.D.N.Y. Jan. 17, 2008).

Additionally, police officers are afforded qualified immunity from suit under 42 U.S.C. § 1983 for their investigative acts. See Robison v. Via, 821 F.2d 913 (2d Cir. 1987) (citing Malley v. Briggs, 106 S.Ct. at 1096)); Taylor v. Kavanagh, 640 F.2d 450, 452 (2d Cir. 1981). Here, plaintiff's deposition testimony reveals that he has no actionable claim against Chief Warren, Sgt. Hood, Lt. Hayes, and Lt. Campbell and dismissal is warranted.

Plaintiff admits that Chief Warren was not present during plaintiff's arrest and that Chief Warren was not involved in the subject arrest in any manner. See Exh. C, at p. 149, 151. Likewise, plaintiff admits that Sgt. Hood was not present during plaintiff's arrest and that Sgt. Hood was not involved in the subject arrest in any manner. See Exh. C, at p. 95. Plaintiff's only basis for suing Sgt. Hood is plaintiff's belief that Sgt. Hood was one of the sergeants in charge of the shift. See Exh. C, at p. 145-46. Plaintiff also admits that Lt. Hayes was not present during

11

plaintiff's arrest and was not involved in the subject arrest in any manner. See Exh. C, at pp. 132, 142. Plaintiff also admits that Lt. Campbell was not present during his arrest and was not involved in the subject arrest in any manner. See Exh. C, at p. 136. Plaintiff's only basis for suing Lt. Campbell is that he was assigned the investigation into plaintiff's arrest. See Exh. C, at p. 137, 140. As such, it follows that plaintiff's Complaint fails to allege any basis whatsoever for a claim against these individual defendants. See e.g. Thompson, 2008 WL 190449; Cosby v. City of White Plains, 2007 WL 853203 (S.D.N.Y. Feb. 9, 2007). There is no evidence which would establish that defendants Chief Warren, Sgt. Hood, Lt. Hayes or Lt. Campbell were present during or personally involved in plaintiff's arrest and subsequent prosecution or that they personally used excessive force against plaintiff. Moreover, assuming *arguendo* that plaintiff was subjected to excessive force, there is no evidence that defendants Chief Warren, Sgt. Hood, Lt. Hayes and Lt. Campbell actually observed this use of force.

Therefore, it is respectfully submitted that the claims against Chief Warren, Sgt. Hood, Lt. Hayes and Lt. Campbell must be dismissed under the doctrine of qualified immunity.

## CONCLUSION

Based upon the foregoing, it is respectfully requested that this Court issue an Order, pursuant to Fed. R. Civ. P. 12(c), dismissing this action as against the individual defendants under the doctrine of qualified immunity and for such other and further relief as this Court deems just, proper and equitable.

Dated: Mineola, New York
      April 16, 2008

                              MIRANDA SOKOLOFF SAMBURSKY
                              SLONE VERVENIOTIS LLP
                              Attorneys for Defendants
                              240 Mineola Boulevard
                              Mineola, New York 11501
                              (516) 741-7676
                              Our File No.: 07-157

                              By: _____
                              Michael A. Miranda (MAM-6413)
                              Jennifer E. Sherven (JS-4195)

TO:    YOUNG & BARTLETT, LLP
        81 Main Street
        Suite 118
        White Plains, NY 10601
        (914) 285-1500