*Yerney*

**Torres v. Village of Sleepy Hollow**
379 F.Supp.2d 478
S.D.N.Y.,2005.
July 21, 2005 (Approx. 1 page)

379 F.Supp.2d 478

<u>Motions, Pleadings and Filings</u>

United States District Court,
S.D. New York.
Josue TORRES, Plaintiff,
v.
VILLAGE OF SLEEPY HOLLOW, Jose Quinoy, Individually, Philip Zegarelli,
Individually, and Joseph Defeo, Individually, Defendants.
No. 04 CIV. 3640(CM).
July 21, 2005.

**Background:** Arrestee, who was a village employee at time of arrest, brought action against village, his former supervisor, village mayor, and police officer who arrested him, alleging federal claims for use of excessive force, illegal search of his vehicle, and retaliation in violation of his First Amendment rights, as well as state claims for common law battery, malicious prosecution, and intentional infliction of emotional distress. Defendants moved for judgment on the pleadings.

**Holdings:** The District Court, <u>McMahon</u>, J., held that:
<u>(1)</u> arresting officer was not entitled to qualified immunity on excessive force and illegal search claims; but
<u>(2)</u> officer did not retaliate against arrestee for exercising his First Amendment right to file a complaint and notice of claim alleging police brutality; and
<u>(3)</u> mayor and supervisor were not entitled to judgment on the pleadings, on ground of qualified immunity, on First Amendment retaliation claim.

Motion granted in part, and denied in part.

West Headnotes

[1] <u>KeyCite Notes</u> 🔳

<u>78</u> Civil Rights
  <u>78III</u> Federal Remedies in General
    <u>78k1372</u> Privilege or Immunity; Good Faith and Probable Cause

78k1376 Government Agencies and Officers
78k1376(4) k. Municipalities and Counties and Their Officers. Most Cited Cases

Defense of qualified immunity from suit under § 1983 was not available to village. 42 U.S.C.A. § 1983.

[2] KeyCite Notes

78 Civil Rights
  78III Federal Remedies in General
    78k1372 Privilege or Immunity; Good Faith and Probable Cause
      78k1376 Government Agencies and Officers
        78k1376(6) k. Sheriffs, Police, and Other Peace Officers. Most Cited Cases

170A Federal Civil Procedure KeyCite Notes
  170AVII Pleadings and Motions
    170AVII(L) Judgment on the Pleadings
      170AVII(L)2 Particular Cases
        170Ak1061 k. In General. Most Cited Cases

Police officer who allegedly broke arrestee's wrist even though he was not resisting arrest was not entitled to judgment on the pleadings, on ground of qualified immunity, on excessive force claim in arrestee's civil rights action under § 1983, where, if facts were as alleged by arrestee, no reasonable police officer could possibly have thought it was necessary to use the degree of force that officer allegedly used to make arrest. 42 U.S.C.A. § 1983.

[3] KeyCite Notes

78 Civil Rights
  78III Federal Remedies in General
    78k1372 Privilege or Immunity; Good Faith and Probable Cause
      78k1376 Government Agencies and Officers
        78k1376(6) k. Sheriffs, Police, and Other Peace Officers. Most Cited Cases

170A Federal Civil Procedure KeyCite Notes
  170AVII Pleadings and Motions
    170AVII(L) Judgment on the Pleadings
      170AVII(L)2 Particular Cases
        170Ak1061 k. In General. Most Cited Cases

Police officer who searched motorist and his vehicle after he "mouthed off" was not

entitled to judgment on the pleadings, on ground of qualified immunity, in motorist's civil rights action under § 1983, alleging claim for illegal search of his vehicle, where, if facts were as alleged by motorist, no reasonable police officer could possibly have believed he had probable cause to search either motorist or his car for cocaine. U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983.

[4] KeyCite Notes

35 Arrest
    35II On Criminal Charges
        35k63 Officers and Assistants, Arrest Without Warrant
            35k63.4 Probable or Reasonable Cause
                35k63.4(2) k. What Constitutes Such Cause in General. Most Cited Cases

92 Constitutional Law KeyCite Notes
    92XV Right to Petition for Redress of Grievances
        92k1436 k. Retaliation in General. Most Cited Cases
        (Formerly 92k91)

Police officer did not retaliate against arrestee for exercising his First Amendment right to file a complaint and notice of claim alleging police brutality, by subsequently arresting him for drinking in public, where officer had probable cause to arrest him for violation of village's open container law. U.S.C.A. Const.Amend. 1.

[5] KeyCite Notes

78 Civil Rights
    78III Federal Remedies in General
        78k1372 Privilege or Immunity; Good Faith and Probable Cause
            78k1376 Government Agencies and Officers
                78k1376(10) k. Employment Practices. Most Cited Cases

170A Federal Civil Procedure KeyCite Notes
    170AVII Pleadings and Motions
        170AVII(L) Judgment on the Pleadings
            170AVII(L)2 Particular Cases
                170Ak1061 k. In General. Most Cited Cases

Village mayor and former village employee's supervisor were not entitled to judgment on the pleadings, on ground of qualified immunity, on employee's claim that village did not rehire him when he was able to return from disability in retaliation for the exercise of his First Amendment rights, in filing complaint and notice of claim against village, where no

reasonable official charged with hiring public employees could possibly have thought that it was constitutional to refuse to rehire an employee after his disability ended solely and simply because he was planning to sue village and village police officer for wrongfully breaking his arm. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

*479 William Gerard Martin, Martin & Colin, P.C., White Plains, NY, for Plaintiff.

Linda Williams McCarthy, Gaines, Gruner, Ponzini & Novick, LLP, White Plains, NY, James A. Randazzo, Servino Santangelo & Randazzo LLP, Hawthorne, NY, for Defendants.

### *480 MEMORANDUM DECISION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

MCMAHON, District Judge.

### The Allegations of Fact

The following allegations of fact are recited most favorably toward plaintiff.

Josue Torres began working as a manual laborer with the Village of Sleepy Hollow Highway Department in the summer of 2000. He was hired by Joseph DeFeo, who is the Superintendent of that Department and who was, at all times, plaintiff's immediate supervisor.

On May 14, 2003, Torres-who moonlighted by delivering pizzas for a local pizzeria-was driving on a public street in the Village of Sleepy Hollow, returning from a delivery. He saw a police car with lights flashing, pulled over, turned off his vehicle and exited. Officer Zekus, who is not a defendant in this action, ordered Torres to get back into his car. Torres mouthed off to the officer, but complied with a second order to return to his car. A second police car, containing defendant Officer Jose Quinoy and a third policeman, pulled up behind plaintiff's vehicle.

Plaintiff claims to have been driving well under the speed limit and to have had no idea that the police were pulling him over or why they would have done so. He was upset, and repeatedly told Zekus that if he (plaintiff) lost his job with the pizzeria, it would be the officer's fault. However, he did give Zekus his license and registration, as requested.

Defendant Quinoy approached Torres' car and asked plaintiff who he was threatening. Torres responded, "No one," which is hardly surprising, since the phrase, "If I lose my job, it will be your fault," expresses no threat toward anyone. Quinoy, however, ordered plaintiff to get out of his car. As plaintiff was complying with this directive, Quinoy grabbed Torres' left hand, yanked him out of his car, spun him around, put his elbow onto the back of plaintiff's neck and pressed him against the frame of the car. He next kicked

plaintiff in the leg to spread them and twisted plaintiff's wrist. When plaintiff screamed, Quinoy asked, "Are you high on crack?" Instead of answering the question or keeping quiet, Torres' mouthed off again, expressing the point of view that it was Quinoy who did crack. Quinoy kept plaintiff's wrist twisted behind his back for about two minutes, until Torres yelled, "Police brutality!" At that point, Quinoy stopped twisting plaintiff's wrist, though he did not let go of plaintiff's arm until he placed Torres into Zekus's patrol car. Plaintiff did not use force against any of the officers.

Quinoy then searched Torres' vehicle, including the passenger compartment and the locked trunk, for approximately five minutes. He then ordered plaintiff to return to his car. Zekus issued three traffic tickets to Torres, all for not stopping at a stop sign. The incident ended.

Later that night, Torres went to the Sleepy Hollow Police Station and filed a report against Quinoy. Approximately two months later, on July 16, 2003, Torres served a notice of claim on the Village, alleging police brutality.

From this incident, there allegedly flowed a series of consequences.

First, plaintiff suffered physical injury at Quinoy's hands. On the night of the incident, he drove himself to the hospital. The wrist was x-rayed and placed in a soft cast. A Dr. McGill told Torres he would need an operation. Surgery was performed on October 31, 2003.

*481 Second, he lost his job with the Village of Sleepy Hollow. Because of the injury, plaintiff was unable to work. The day after the incident, plaintiff reported his injury to DeFeo, who told him to bring a doctor's note when he came back to work. Plaintiff was not medically cleared to return to work until April 13, 2004. When he told DeFeo he was ready to come back, DeFeo told him that he was not permitted to come back, and cited as the reason his pending lawsuit against the Village. On prior occasions, plaintiff had missed work due to injury, but was always allowed back with a doctor's note. Moreover, at or about the time plaintiff was told he would not be allowed back, the Village's DPW was hiring laborers. When plaintiff put in an application for one of those jobs, DeFeo told him that Sleepy Hollow's Mayor, defendant Philip Zegarelli, would not permit DeFeo to rehire Torres because of the pending lawsuit. Torres tried to make an appointment with Zegarelli, but the Mayor refused to see him.

Third, plaintiff was targeted by Quinoy on two other occasions. Two days after he filed his Notice of Claim, on July 18, 2003, plaintiff and three other individuals, who were drinking on the street in violation of Sleepy Hollow's Open Container Law, were arrested after Quinoy-one of the four officers who approached the men about their drinking-spied a paper bag on the ground in the vicinity of the group that Quinoy believed contained cocaine. Plaintiff denied any knowledge of the cocaine, as did the other three men. All four men were arrested. One of the four arrestees was released almost immediately, but plaintiff and the two others were detained for several days on charges of Criminal Possession of a Controlled Substance. In a search incident to the arrest, cocaine was

found on one of the four men, Luis Lopez, but not on plaintiff's person. Plaintiff remained in jail for several days, until his family could arrange to post bail. All charges against plaintiff arising out of this arrest were dismissed when Lopez pled guilty to possession. A few weeks later, Quinoy allegedly ticketed plaintiff's car.

Unlike plaintiff, Lopez-the man who pled guilty to possessing cocaine-was returned to his position as a laborer with the DPW only two weeks after he was released from the County Correctional Facility after serving sentences for felony assault and narcotics possession.

The officers have put in affidavits that tell their side of this story. For purposes of this motion-which is limited to the issue of qualified immunity-those affidavits are irrelevant. In deciding a motion to dismiss on the issue of qualified immunity, plaintiff's allegations of fact are presumed to be true. *McKenna v. Wright*, 386 F.3d 432, 434 (2d Cir.2004). The issues to be decided are whether-assuming plaintiff's story to be true in all respects-any constitutional violation occurred, and if one did, whether any defendant who was personally involved with that violation is entitled to invoke qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

**The Instant Complaint**

On May 13, 2004, plaintiff filed the instant complaint for injunctive relief (specifically, a mandatory injunction forcing the Village to rehire him in his old job) and money damages. He pursues this relief on the following constitutional theories:

1. Use of excessive force against Quinoy for the events of May 14, 2003 (Fourth Amendment).

2. Illegal search of his vehicle without probable cause on May 14, 2003 (Fourth Amendment).

3. Violation of plaintiff's First Amendment rights, by preventing plaintiff from *482 resuming his employment with the Village of Sleepy Hollow, and refusing to hire plaintiff into a vacant position similar to his former position, in retaliation for his having filed a complaint and a Notice of Claim against the Village and Quinoy.

In addition to his federal claims, plaintiff asserts parallel claims under the New York State Constitution, and claims against Quinoy for common law battery and malicious prosecution (under New York State law). He also throws in the usual claim for intentional infliction of emotional distress (a highly disfavored claim under New York law).

[1] On July 26, 2004, all defendants moved pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings "on the ground of qualified immunity." Of course, qualified immunity does not extend to the Village of Sleepy Hollow, *Ford v. Reynolds*, 316 F.3d

351, 356 (2d Cir.2003), or to claims brought under the Constitution and laws of the State of New York. *See Robison v. Via*, 821 F.2d 913, 920-21 (2d Cir.1987) (analyzing qualified immunity in terms of whether an interest protected by federal law could have been violated); *see also, e.g., Napolitano v. Flynn*, 949 F.2d 617, 620-21 (2d Cir.1991) (noting that the substantive law of Vermont would govern questions of immunity from suit with respect to claims under Vermont law, and applying only the state law immunity analysis to the state law claims); *Hirschfeld v. Spanakos*, 909 F.Supp. 174, 177-80 (S.D.N.Y.1995) (noting that qualified immunity is available to shield officials from liability for actions that do not violate clearly established federal rights, whereas the separate doctrine of "official immunity" affords public officials in New York protection against state law claims based on the performance of a discretionary function).[FN1] As discussed more fully below, qualified immunity is a defense afforded to individuals acting under color of state law who are sued for federal Constitutional violations pursuant to 42 U.S.C. § 1983. *See, e.g., Charles W. v. Maul*, 214 F.3d 350, 357 (2d Cir.2000). Thus, without further discussion, defendant Sleepy Hollow's motion to dismiss the complaint as against it on the basis of "qualified immunity" must be denied, as must any motion directed toward the Fifth, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh Causes of Action.[FN2]

FN1. Defendants have made no argument that New York's "official immunity" doctrine should apply here.

FN2. The "Twelfth Cause of Action" is captioned "Injunctive Relief." There is no such cause of action. Plaintiff seeks a mandatory injunction as one remedy for the violations of law alleged in the first eleven causes of action. The Twelfth Cause of Action is dismissed for failure to state a claim, without prejudice to plaintiff's ability to assert his right to the remedy of an injunction should he prevail on the claims relating to the loss of his employment.

Quinoy, DeFeo and Zegarelli all assert that they are entitled to qualified immunity. Because they are individuals who are alleged to have committed constitutional torts while acting under color of state law, the doctrine applies to them. Unfortunately, their counsel makes the all too common error of conflating that doctrine with arguments that plaintiff is not entitled to relief on the merits, either because the facts are not as recited by plaintiff or because no constitutional violation was committed. I will sort this out below.

**The Doctrine of Qualified Immunity**

Government officials performing discretionary functions are entitled to qualified immunity "from federal constitutional claims ... as long as their actions could reasonably have been thought consistent *483 with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).

In *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court indicated that the availability of qualified immunity ought to be decided by a court at the earliest possible opportunity-preferably at the outset of the case, at which point plaintiff's well pleaded allegations are assumed to be true, and defendant's version of the facts is immaterial. Thus, as the Second Circuit explained in *Stephenson v. John Doe*,

*Detective,* 332 F.3d 68 (2d Cir.2003), when determining a motion to dismiss on qualified immunity grounds in advance of full merits discovery, and the question to be answered is whether a reasonable Government officer, confronted with the facts as alleged by plaintiff, could reasonably have believed that his actions did not violate some settled constitutional right. The inquiry is a two-step one. First, the court must determined whether, taking the facts in the light most favorable to the party asserting the injury, a constitutional infraction was committed. *Saucier, supra,* 533 U.S. at 201, 121 S.Ct. 2151. If the answer to that question is yes, the court must decide whether a reasonable official in defendant's position (as that position is described by plaintiff) ought to have known that he was violating plaintiff's constitutional rights by doing what plaintiff alleges he did.[FN3] Ordinarily, the relevant inquiry will be whether the law is in fact well-settled- because if it is, "the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow v. Fitzgerald,* 457 U.S. 800, 818-19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Claims that a public officer made a reasonable mistake of fact, "go to the question of whether the plaintiff's constitutional rights were violated, not the question of whether the officer was entitled to qualified immunity." *Stephenson, supra,* 332 F.3d at 78 ( *citing Saucier, supra,* 533 U.S. at 205, 206, 121 S.Ct. 2151).

FN3. If the answer to this question is "No"-as it is in this case on one of the claims against Quinoy-then the claim will be dismissed, but for failure to state a claim, not on qualified immunity grounds.

It is no defense to a claim of qualified immunity that the defendant did not do what plaintiff said he did. At this early stage of a lawsuit, before discovery takes place, we are presuming that the plaintiff's version of events is true, so a court cannot take into account assertions by the accused officer that contradict the plaintiff's allegations. Nothing in *Saucier* can be read to deprive the plaintiff of his Seventh Amendment right to have a jury resolve all disputed issues of material fact. If plaintiff's version of the facts is wrong and defendant's is correct, then the defendant will prevail, not on the ground of qualified immunity, but because he did nothing wrong.

To explain with example: in this case, as in so many others, plaintiff alleges that the defendant used excessive force against him. The right to be free from the use of more force than is reasonably necessary to effect a lawful arrest is certainly well-settled, and no reasonable police officer could possibly believe otherwise. Therefore, unless the facts as asserted by plaintiff in the complaint (and, under my rules, in his deposition)[FN4] could never be found by *484 a reasonable trier of fact to constitute excessive force (for example, if plaintiff alleged only that the defendant took him by the hand), an officer accused of using excessive force will ordinarily not be able to get out of a lawsuit prior to discovery on the ground of qualified immunity. If the officer's defense is that the force he used was not excessive-that is, the force used was reasonably necessary to effect the arrest-then the officer is asserting that he did not violate the plaintiff's constitutional rights, and while he may ultimately prevail on the merits, he is not entitled to dismissal of the lawsuit at an early stage.

FN4. Under this Court's rules, the plaintiff is deposed before a rule 12(c) motion on qualified immunity grounds is made, so that the plaintiff's complete story-not just the minimal allegations required of a pleader under Fed.R.Civ.P. 8-is before the Court. No other discovery (including depositions of the defendants) is permitted prior to the determination of the qualified immunity motion, however, because none would be relevant at the commencement of the lawsuit, when the Supreme Court and the Second Circuit require this issue to be decided.

Here, plaintiff alleges that he did everything the officers asked him to do and used absolutely no force against them, but was nonetheless seriously injured by an arresting officer, to a degree that required surgery and kept him out of work for almost a year. It has long been the law in this Circuit that a suspect has a right to be free from "excessively forceful handcuffing." *Robison, supra,* 821 F.2d at 923-24 (plaintiff's statement that an officer threw her up against a fender and twisted her arm behind her back, causing her to suffer bruises lasting a couple of weeks, was sufficient to preclude summary judgment on an excessive force claim). Therefore, a court would have to conclude, as a matter of law, that a constitutional violation was committed if plaintiff's allegations of fact are true.

With these principles in mind, I turn to each of the three individual defendants.

*1. Quinoy*

(a) Fourth Amendment Violations

Officer Quinoy is alleged to have violated Torres' Fourth Amendment rights in two separate ways. First, he is alleged to have used excessive force against plaintiff while effecting his arrest. Second, he is alleged to have conducted an illegal search of plaintiff's car, without probable cause to believe that a crime had been committed. He is not entitled to *Saucier* qualified immunity against either of these charges.

[2]    The excessive force charge is analyzed above, in my example of how qualified immunity does-and does not-work. Plaintiff charges that Quinoy broke his wrist even though plaintiff was not resisting arrest, refusing to follow any order of the police officers, or using any force against them. The right to be free from excessive force is well-settled. If the facts are as plaintiff alleges, no reasonable police officer could possibly have thought it was necessary to use the degree of force that Quinoy allegedly used in this case. If in fact it was necessary for Quinoy to break plaintiff's wrist in order to subdue him-if, for example, plaintiff was flailing around or trying to escape-then, *assuming Quinoy's demand that he get out of the car was lawful,* the officer will be exonerated at trial.[FN5] But he cannot get out of the lawsuit at this early stage on that basis.

FN5. Plaintiff does not, in responding to the motion, raise the issue of the lawfulness of Quinoy's demand that he get out of the car. Plaintiff was eventually cited (by another officer, not Quinoy) for running a stop sign. That is a violation, not a crime, and ordinarily would not permit the police to subject the plaintiff to a *DeBour* level two or

three stop. As stated by the New York Court of Appeals in *People v. Hollman*, a "level two inquiry" is "activated by a founded suspicion that criminal activity is afoot," and permits a police officer to ask somewhat intrusive questions. 79 N.Y.2d 181, 184-85, 581 N.Y.S.2d 619, 590 N.E.2d 204 (1992) (discussing *People v. De Bour*, 40 N.Y.2d 210, 386 N.Y.S.2d 375, 352 N.E.2d 562 (1976)). A "level three inquiry" requires reasonable suspicion that a particular person was involved in a felony, and permits an officer to forcibly stop and detain that person. *Id.* Thus, without a "founded" or "reasonable" suspicion that a crime had been committed, Quinoy would not have been permitted to detain the plaintiff. Interestingly, Quinoy does not dispute plaintiff's description of this incident; rather, over and over again, his lawyer refers to Torres' repeated shouts of, "If I lose my job, it's your fault," as a "threat." The words themselves fail to convey any threat, so it will take some information that is not yet in the record-for example, information about what plaintiff was doing at the time he shouted these words-to transform them into something that would give rise to reasonable suspicion of criminal activity-even criminal activity under Penal Law Section 240.20, let alone Penal Law Section 240.26.

Quinoy asserts in his moving brief that he was permitted to order plaintiff out of the car "as part of his further investigation." (Moving Br. at 9.) Quinoy does not say what he had reason to "further investigate." I can state categorically that, on the facts testified to by plaintiff, he did not have any basis to order plaintiff out of his car on a reasonable suspicion that plaintiff either possessed or was using cocaine. Certainly, if Quinoy is suggesting that his actions are shielded by the fact that Zekus (not Quinoy) had probable cause to stop the car in the first place, he is just plain wrong. Assuming arguendo that Zekus told Quinoy he had seen plaintiff run a stop sign (which would be necessary to impute Zekus's knowledge to Quinoy under the fellow officer rule), observing a traffic violation, without more, does not give rise to probable cause to believe a drug crime is being committed.

*485 [3]    Plaintiff also alleges that Quinoy illegally searched his car. The right to be free from unreasonable searches-that is, searches conducted without probable cause-is well-settled, and defendant would be hard pressed to assert otherwise. On the facts alleged by plaintiff, no reasonable police officer could possibly have believed he had probable cause to search either Quinoy or his car for cocaine. The record contains only the allegations that, while plaintiff was yelling, Quinoy asked, "Are you high on cocaine?"-a question to which plaintiff regrettably gave a smart-assed answer. Nothing in the record at this time suggests that Quinoy saw a suspicious bulge in plaintiff's pocket, or glimpsed what looked like a glassine envelope on the floor of Torres's car through the open door, or anything else that would have given rise to probable cause to believe that plaintiff had any drugs in his possession. The fact that a man yells when his arm is twisted so hard that it breaks his wrist, or that he gives a sassy answer to a question about drug use, does not give rise to probable cause to search a vehicle for drugs. So qualified immunity does not get Quinoy out from under this charge, either. If there was probable cause to search, there was no constitutional violation, but determination of that issue must abide Quinoy's testimony.

(b) First Amendment Retaliation

Quinoy is also alleged to have retaliated against plaintiff for exercising his First Amendment right to file a complaint and a notice of claim (the necessary precursor to a lawsuit) against Quinoy. Plaintiff alleges that Quinoy's decision to arrest him on July 18, 2003, for possession of cocaine, came in retaliation for his filing the local complaint and the notice of claim (the latter having been filed only two days earlier). Here, Quinoy's claim of qualified immunity is trickier to analyze.

[4] Plaintiff has a well-settled right to complain about police misconduct-and to bring a lawsuit to seek redress for that alleged misconduct-without being subjected to retaliation. *Kerman v. City of New York*, 261 F.3d 229, 241-42 (2d Cir.2001) (discussing the First Amendment \*486 right to verbally criticize the police without reprisal); *see also Wise v. New York City Police Dep't*, 928 F.Supp. 355, 372 (S.D.N.Y.1996) (complaints of systemic police misconduct are protected speech, even when the complainant is a police employee, since the issue is a matter of public concern). Two days prior to this arrest, plaintiff had filed such a complaint. Nonetheless, Quinoy had probable cause to arrest him, and his companions, for a violation of Sleepy Hollow's Open Container Law. The facts alleged and testified to by plaintiff include an admission that he, along with three friends, was drinking on the street in violation of Sleepy Hollow's Open Container Law. Under New York law, the admitted violation of the Open Container Law-even without Quinoy's subsequent examination of the paper bag containing cocaine-would have been enough to support plaintiff's arrest. *See People v. Bothwell*, 261 A.D.2d 232, 690 N.Y.S.2d 231 (1st Dep't), *leave to appeal denied*, 93 N.Y.2d 1026, 697 N.Y.S.2d 585, 719 N.E.2d 946 (1999) (noting that a police officer is authorized to arrest a person he has "reasonable cause" to believe violated the Open Container Law); *see also McDermott v. City of New York*, No. 00 Civ. 8311(LAK)(GWG), 2002 WL 265127 at \*6 (S.D.N.Y. Feb. 25, 2002) (noting that "New York courts have recognized that where probable cause exists to arrest someone in violation of an Open Container statute, an officer may do so") (citing *People v. Pantusco*, 107 A.D.2d 854, 484 N.Y.S.2d 321 (3d Dep't 1985)).

Thus, even under plaintiff's version of events, there was no violation of his constitutional rights when Quinoy arrested him. There is no need to reach the issue of qualified immunity; Torres' claim of retaliation simply must be dismissed. *Saucier, supra*, 533 U.S. at 201, 121 S.Ct. 2151 (noting that, if no constitutional right was violated, assuming plaintiff's version of the facts to be true, there is no need to consider whether a reasonable officer in the defendant's position would have done what defendant did).

### 2. DeFeo and Zegarelli

The claim against DeFeo and Zegarelli is a First Amendment retaliation claim-namely, that they refused to return him to his position as a laborer with the Sleepy Hollow DPW, either by giving him his old job back after he ceased to be disabled, or by hiring him anew after he put in an application, in retaliation for his having filed a Notice of Claim against the Village and Quinoy arising out of his arrest. As evidence, plaintiff cites the fact that one Luis Lopez-who was also arrested for drug possession, and who was

convicted (as plaintiff was not) for that crime was hired for a DPW position as soon as he was released from jail. Plaintiff, on the other hand, was allegedly told he could not have his job back because the Mayor would not permit it due to "the lawsuit."

[5]    A citizen has a settled right not to suffer retaliation for the exercise of his First Amendment rights. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-84, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (discussing plaintiff's potential entitlement to reinstatement if he could prove that the decision not to rehire him was made by reason of his exercise of his First Amendment rights) (citing *Perry v. Sindermann*, 408 U.S. 593 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)). *See also Estate of Morris v. Dapolito*, 297 F.Supp.2d 680, 694 (S.D.N.Y.2004) (noting that the Second Circuit articulated the elements of First Amendment retaliation in *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir.1987), and finding actionable retaliation where student who complained about teacher who *487 assaulted him was subjected to "severe punishment"). No reasonable official charged with hiring public employees could possibly have thought that it was constitutional to refuse to rehire an employee after his disability ended solely and simply because he was planning to sue the Village and Quinoy for wrongfully breaking his arm.

That being so, it is obvious that DeFeo and Zegarelli cannot obtain dismissal of the claim in suit on the ground of qualified immunity. DeFeo protests that he is not the decision-maker with regard to plaintiff's job, but that does not entitle him to qualified immunity. It might entitle him to summary judgment some day, but not to dismissal on the pleadings today.

Zegarelli contends that the only thing he is alleged to have done was refuse to meet with plaintiff, but he is being deliberately obtuse. DeFeo is alleged to have told plaintiff that he (DeFeo) could not rehire plaintiff because the Mayor of Sleepy Hollow would not permit it. Zegarelli is, in short, alleged to have made the ultimate decision not to permit plaintiff to return to work for the Village—and he is alleged to have done so solely because plaintiff had filed a Notice of Claim arising out of the excessive force incident. These allegations may or may not pan out, but Zegarelli is certainly not entitled to qualified immunity. For if the facts are as plaintiff alleges, no reasonable decision-maker in Zegarelli's position could possibly have believed he was entitled to act as he allegedly did.

**The Village's Motion for Dismissal on the Pleadings is Denied**

The Village seeks dismissal of the complaint on the ground that the individual defendants should have the complaint dismissed as against them. Because none of the defendants is entitled to dismissal of the entire complaint as against him on the ground of qualified immunity, the Village's motion lacks merit. If, at the close of discovery, there is no basis for holding the Village liable–either because plaintiff has not adduced evidence of a violation by any defendant or under *Monell v. New York City Dept. of Social Services*,

436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)-the Court will entertain a motion for summary judgment.

### Conclusion

The First Amendment retaliation claim against defendant Quinoy is dismissed. Otherwise, defendants' Rule 12(c) motion is denied. A Scheduling Order is attached.

This constitutes the decision and order of the Court.

S.D.N.Y.,2005.
Torres v. Village of Sleepy Hollow
379 F.Supp.2d 478

Motions, Pleadings and Filings (Back to top)

• 2006 WL 1416601 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum of Law Submitted in Support of Plaintiff's Motion for Partial Summary Judgment (Apr. 28, 2006)
• 7:04cv03640 (Docket) (May. 13, 2004)
END OF DOCUMENT

West Reporter Image (PDF)